IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JERVARA GARDNER, )<br>)<br>        Plaintiff, )<br>)<br>    v. )<br>)<br>CITY OF CHICAGO and UNKNOWN CHICAGO )<br>POLICE OFFICERS, )<br>)<br>        Defendants. ) | FILED: MAY 15, 2008<br>08CV2836     LI<br>JUDGE KENDALL<br>MAGISTRATE JUDGE COLE<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, JERVARA GARDNER, by and through his attorneys, Loevy & Loevy, and complaining of Defendants, CITY OF CHICAGO and UNKNOWN CHICAGO POLICE OFFICERS, states as follows:

### Introduction

1.   This action arises from the unjustified shooting of Jervara Gardner by as-yet unknown Chicago Police Officers and is brought under 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2.   This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**Background**

3. Nineteen year-old Jervara Gardner is a resident of Chicago, Cook County, Illinois.

4. On Sunday, May 11, 2008, Mr. Gardner was walking with his two year-old son to his aunt's home for mother's day dinner.

5. As-yet unknown Chicago police officers approached the area and without lawful justification fired gunshots which struck Mr. Gardner in the back.

6. The use of deadly force by the Chicago police officers was inappropriate, unwarranted, and unjustifiable.

7. As a result of the police officers' unlawful use of force, Jervara Gardner is paralyzed from the waste down, he has suffered, and continues to suffer, severe pain and distress.

**The City's Responsibility**

8. The City of Chicago maintains a *de facto* policy, practice and custom of failing to properly train, supervise, discipline and control its officers, which was the moving force behind the unjustified shooting of Jervara Gardner.

9. Municipal policy-makers have long been aware of the City's policy and practice of failing to properly train, monitor and discipline its police officers:

   a. In 1999, following two high profile police shootings, the City Council held public hearings on the prevalence of police brutality and unjustified shootings, as well as the failure of the Department's disciplinary system. At those

2

hearings, members of the Council assured the public that changes would be made to the Chicago Police Department policies and practices to address these issues.

      b.    On September 28, 1999, the then-Superintendent of Police gave a speech highlighting problems with the City of Chicago's policies and practices relating to the use of force. Then-Superintendent Hillard spoke specifically of the need for (1) better in-service training on the use of force; (2) early detection of potential problem officers; (3) an effective disciplinary system, and (4) officer accountability for the use of force.

      c.    In a review commissioned by the Superintendent, John Marshall Law School found that although the City of Chicago's written policy on the use of force was in compliance with the law, more training of police officers was necessary for the written policy to be effective in practice.

      d.    A few months later, in January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

e. A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

f. Two years later, a federal jury in the case of Garcia v. City of Chicago, No. 01 C 8945, 2003 WL 22175618, *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department. The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off-duty Chicago police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. Id. at *1.

g. By its own accounting, the City of Chicago sustains only a very small percentage of the thousands complaints brought against police officers for use of excessive force each year. A even smaller percentage of officers are actually disciplined for their misconduct.

4

10. Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address that failure. Redress that was specifically promised by the City Council and the Superintendent has gone unfilled.

11. For example, the City's training program has not changed since 1999, despite repeated promises by the City for a more comprehensive training program. As a result, officers on the streets of Chicago are ill-equipped to make the necessary decisions on the use of force. Further, this lack of training greatly increases of the susceptibility of officers to improper and violent abuses of their police power through the unjustified use of force, such as that at issue in this case.

12. Similarly, the City has failed to institute any system for recognizing problem officers or to ensure an effective disciplinary system.

13. As a result of the City's policies, practices and customs, its officers are emboldened to use unlawful force by their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

14. As the City continues to ignore its own role in the abuse by its officers, the number of police shootings in Chicago have actually increased. See Exhibit A, Rupa Shenoy, "Armed and Dangerous," *The Chicago Reporter,* January 2004. In 2003 alone, there were 65 police shootings, 17 of which were fatal, more even

than in New York City, which is three times the size of Chicago. Id.

15.  At the time that as-yet unknown Chicago police officers shot Jervara Gardner, they knew that the City would not subject them to any meaningful investigation, discipline or criminal prosecution. Their misconduct in this case was a direct result of the City's unconstitutional polices, practices and customs.

### Count I - 42 U.S.C. § 1983

**Excessive Force**

16.  Each of the foregoing Paragraphs is incorporated as if restated fully herein.

17.  As described in the preceding paragraphs, the conduct of the as-yet unknown Chicago police officers, acting under color of law, constituted excessive force in violation of the United States Constitution.

18.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Gardner's constitutional rights.

19.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

20.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of excessive force can be confident that the Department will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in excessive force;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report

misconduct committed by other officers, such as the misconduct at issue in this case;

  e. The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

  f. As a matter of express policy, the City of Chicago does not retain any records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career. Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers; and

  g. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct twenty times in row, the Department will not consider those allegations if they are deemed unsustained.

21. As a result of Chicago police officers' unjustified and excessive use of force, as well as the City of Chicago's policy and practice, Mr. Gardner has suffered and continues to suffer from serious physical injury and emotional distress.

**COUNT II – State Law Claim**

**Intentional Battery**

22. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

23. The Chicago police officer(s) shot Mr. Gardner and did so intentionally.

24. As described more fully in the preceding paragraphs the actions of the Chicago police officers constituted offensive physical contact made without the consent of Mr. Gardner.

25. The Chicago police officers' actions were undertaken intentionally, willfully and wantonly, and were the proximate cause of Mr. Gardner's great bodily harm and significant pain and suffering.

26. The misconduct described in this Count was undertaken with intentional disregard of the Mr. Gardner's rights.

27. As a result of the Chicago police officers' misconduct Mr. Gardner has suffered and continues to suffer from serious physical injury and emotional distress.

WHEREFORE, Plaintiff, JERVARA GARDNER, respectfully requests that the Court enter judgment in his favor and against Defendants, CITY OF CHICAGO and UNKNOWN CHICAGO POLICE OFFICERS, awarding compensatory damages, along with punitive damages against the CHICAGO POLICE OFFICERS in their individual capacities, as well as any other relief this Court deems just and appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Amanda Antholt
LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607
(312) 243-5900


Michael Johnson
Michael A. Johnson & Associates
415 North LaSalle St.
Suite 502
Chicago, IL 60610-4543

10