IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JERVARA GARDNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 08 C 2836 |
| v. | ) |
| | ) Judge Kendall |
| CITY OF CHICAGO, CHICAGO POLICE OFFICER ) | |
| PETER AMELIO #11341, CHICAGO POLICE | ) |
| OFFICER KEITH SINKS # 18723, AND OTHER | ) |
| AS-YET UNKNOWN CHICAGO POLICE OFFICERS, ) | |
| | ) |
| Defendants. | ) **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, JERVARA GARDNER, by and through his attorneys, Loevy & Loevy, and complaining of Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICER PETER AMELIO #11341, CHICAGO POLICE OFFICER KEITH SINKS # 18723, AND OTHER AS-YET UNKNOWN CHICAGO POLICE OFFICERS states as follows:

### Introduction

1. This action arises from the unjustified shooting of Jervara Gardner by Chicago Police Officer Peter Amelio and is brought under 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this

judicial district, and the events giving rise to the claims asserted herein occurred within the district.

### Background

3.   Nineteen year-old Jervara Gardner is a resident of Chicago, Cook County, Illinois.

4.   On Sunday, May 11, 2008, Mr. Gardner was walking with his two year-old son to his aunt's home for mother's day dinner.

5.   Defendant Chicago Police Officer Peter Amelio, Chicago Police Officer Keith Sinks and other as-yet unknown Chicago Police Officers (collectively referred to as "Defendant Officers") approached the area.

6.   Without lawful justification, Defendant Officer Amelio fired gunshots which struck Mr. Gardner in the back.

7.   Mr. Gardner was not armed with any gun or weapon when he was shot in the back.

8.   The use of deadly force by Defendant Officer Amelio was inappropriate, unwarranted, and unjustifiable.

9.   As Mr. Gardner lay on the ground severely injured, the Defendant Officers placed a weapon on or near his body.

10.   That gun did not belong to Mr. Gardner and was not possessed by Mr. Gardner at any time until the Defendant Officers placed it on or near him.

11.   The Defendant Officers knew that Mr. Gardner did not possess a weapon at the time of the shooting.

12.  After the shooting, the Defendant Officers falsely accused Mr. Gardner of pointing a weapon at them in order to justify the otherwise unjustifiable shooting.

13.  The Defendant Officers created untruthful police reports, falsely stating "facts" indicating that the Jervara Gardner had pointed a gun at Defendant Officers Amelio and Sinks.

14.  The Defendant Officers took actions designed to conceal and cover-up the fact that Officer Amelio had shot an unarmed man without justification.  In doing so, the Defendant Officers conspired to destroy evidence that would exonerate Mr. Gardner, to pressure and threaten witnesses in an effort to suppress their truthful accounts of the shooting, and to fabricate false evidence.

15.  Prior to the shooting of Jervara Gardner, it was expressly agreed by Defendants Officers, as well as by certain other members of the Chicago Police Department, that if one of their fellow officers shot an unarmed individual, the other officers would seek to fabricate or destroy evidence in order to justify the otherwise unjustifiable shooting, by planting evidence, such as a gun, by destroying exonerating evidence, or by creating false reports and giving false statements to the effect that the unarmed individual had been carrying the planted gun.

16.  This prior agreement was the direct cause of Defendant Officer Amelio's illegal use of deadly force against Jervara

3

Gardner.  Specifically, Amelio used his weapon and acted contrary
to standard police practices, in a situation that did not justify
the use of deadly force, because of his knowledge that he and the
other Defendant Officers could cover-up the unjustifiable use of
deadly force.

17.  As a result of Defendant Officer Amelio's unlawful use
of force, Jervara Gardner is paralyzed from the waist down, he
has suffered, and continues to suffer, severe pain and distress.

### The City's Responsibility

18.  The City of Chicago maintains a *de facto* policy,
practice and custom of failing to properly train, supervise,
discipline and control its officers, which was the moving force
behind the unjustified shooting of Jervara Gardner.

19.  Municipal policy-makers have long been aware of
the City's policy and practice of failing to properly train,
monitor and discipline its police officers:

a.  In 1999, following two high profile police
shootings, the City Council held public hearings on the
prevalence of police brutality and unjustified shootings, as well
as the failure of the Department's disciplinary system.  At those
hearings, members of the Council assured the public that changes
would be made to the Chicago Police Department policies and
practices to address these issues.

b.  On September 28, 1999, the then-Superintendent of
Police gave a speech highlighting problems with the City of

4

Chicago's policies and practices relating to the use of force. Then-Superintendent Hillard spoke specifically of the need for (1) better in-service training on the use of force; (2) early detection of potential problem officers; (3) an effective disciplinary system, and (4) officer accountability for the use of force.

       c.   In a review commissioned by the Superintendent, John Marshall Law School found that although the City of Chicago's written policy on the use of force was in compliance with the law, more training of police officers was necessary for the written policy to be effective in practice.

       d.   A few months later, in January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

       e.   A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality.    The

JCGC findings were presented to Mayor Daley, Superintendent
Hillard and the Chicago Police Board.

     f.    Two years later, a federal jury in the case of
Garcia v. City of Chicago, No. 01 C 8945, 2003 WL 22175618, *2
(N.D. Ill. Sept. 19, 2003) affirmed that the City's police
misconduct investigations were systematically "incomplete,
inconsistent, delayed, and slanted in favor of the officers" and
as a result, fostered a culture of impunity within the Chicago
Police Department. The "City of Chicago's custom and practice of
not adequately investigating, disciplining, or prosecuting
off-duty Chicago police officers who use excessive force against
individuals" was found to have directly caused the constitutional
harm. Id. at *1.

     g.    By its own accounting, the City of Chicago
sustains only a very small percentage of the thousands complaints
brought against police officers for use of excessive force each
year. A even smaller percentage of officers are actually
disciplined for their misconduct.

    20.   Although the City of Chicago has long been aware that
its supervision, training and discipline of police officers is
entirely inadequate, it has not enacted any measures to address
that failure. Redress that was specifically promised by the City
Council and the Superintendent has gone unfilled.

    21.   For example, the City's training program has not
changed since 1999, despite repeated promises by the City for a

more comprehensive training program.  As a result, officers on the streets of Chicago are ill-equipped to make the necessary decisions on the use of force.  Further, this lack of training greatly increases of the susceptibility of officers to improper and violent abuses of their police power through the unjustified use of force, such as that at issue in this case.

22.  Similarly, the City has failed to institute any system for recognizing problem officers or to ensure an effective disciplinary system.

23.  As a result of the City's policies, practices and customs, its officers are emboldened to use unlawful force by their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

24.  As the City continues to ignore its own role in the abuse by its officers, the number of police shootings in Chicago have actually increased.  See Rupa Shenoy, "Armed and Dangerous," *The Chicago Reporter,* January 2004.  In 2003 alone, there were 65 police shootings, 17 of which were fatal, more even than in New York City, which is three times the size of Chicago.  Id.

25.  At the time that Defendant Officer Amelio shot Jervara Gardner, he knew that the City would not subject him to any meaningful investigation, discipline or criminal prosecution. His misconduct in this case was a direct result of the City's unconstitutional polices, practices and customs.

## Count I – 42 U.S.C. § 1983
### Excessive Force

26. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

27. As described in the preceding paragraphs, the conduct of Defendant Officer Amelio constituted excessive force in violation of the United States Constitution.

28. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Gardner's constitutional rights.

29. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

30. The misconduct described in this Count was undertaken by Defendant Officer Amelio within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

31. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of excessive force can be confident that the Department will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in excessive force;

c.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

e.    The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs,

despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago does not retain any records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career.  Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers; and

g.    As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.  In other words, if a police officer is accused of the same sort of misconduct twenty times in row, the Department will not consider those allegations if they are deemed unsustained.

32.    As a result of Defendant Officer Amelio's unjustified and excessive use of force, as well as the City of Chicago's policy and practice, Mr. Gardner has suffered and continues to suffer from serious physical injury and emotional distress.

### COUNT II - Section 1983
### False Arrest/Unlawful Detention

33.    Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

34.  The Defendant Officers falsely arrested and unlawfully detained Plaintiff without legal justification.

35.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

36.  The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

37.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

38.  As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiff suffered damages, including but not limited to emotional distress and anguish.

### COUNT III - Section 1983
### Conspiracy to Deprive Constitutional Rights

39.  Each of the foregoing Paragraphs is incorporated as if restated fully herein.

40.  Prior to the shooting of Jervara Gardner, the Defendants Officers, acting under color of law and within the scope of their employments, entered into an agreement to protect each other from liability for unjustifiable uses of excessive force, including the shootings of unarmed citizens.  Due to this agreement, Defendant Officer Amelio used excessive force, unjustifiable deadly force, against Plaintiff.

11

41.  As described more fully in the preceding paragraphs, the Defendant Officers acted in concert and reached an understanding to deprive the Plaintiff of his Constitutional rights.

42.  Plaintiff was deprived of his Constitutional rights in the manner described in the preceding paragraphs.

43.  In furtherance of the conspiracy, Defendant Officers committed overt acts and were otherwise willful participants in joint activity with state actors acting under color of law.

44.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

45.  The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

46.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs.

47.  As a proximate result of Defendant Officers' conspiracy, Plaintiff suffered injuries, including but not limited to severe physical injuries and emotional distress.

## COUNT IV – State Law Claim
### Intentional Battery

48.  Each of the foregoing Paragraphs is incorporated as if restated fully herein.

49.  Defendant Officer Amelio shot Mr. Gardner and did so intentionally.

50.  As described more fully in the preceding paragraphs the actions of Defendant Officer Amelio constituted offensive physical contact made without the consent of Mr. Gardner.

51.  Defendant Officer Amelio's actions were undertaken intentionally, willfully and wantonly, and were the proximate cause of Mr. Gardner's great bodily harm, pain and suffering.

52.  The misconduct described in this Count was undertaken with intentional disregard of the Mr. Gardner's rights.

53.  The misconduct described in this Count was undertaken by Defendant Officer Amelio within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

54.  As a result of the Defendant Officer Amelio's misconduct Mr. Gardner has suffered and continues to suffer from serious physical injury and emotional distress.

## COUNT V – State Law Claim
### Reckless Battery

55.  Each of the foregoing Paragraphs is incorporated as if restated fully herein.

13

56. As described more fully in the preceding paragraphs the actions of Defendant Officer Amelio constituted offensive physical contact made without the consent of Plaintiff.

57. Defendant Officer Amelio's actions were undertaken willfully, wantonly, and with reckless indifference  or conscious disregard for the safety of others.

58. The misconduct described in this Count was undertaken by Defendant Officer Amelio within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

59. As a result of the Defendant Officer Amelio' misconduct Mr. Gardner has suffered and continues to suffer from serious physical injury and emotional distress.


WHEREFORE, Plaintiff, JERVARA GARDNER, respectfully requests that the Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, OFFICER AMELIO, and OFFICER SINKS, awarding compensatory damages, along with punitive damages against Defendants OFFICER AMELIO and OFFICER SINKS in their individual capacity, as well as any other relief this Court deems just and appropriate under the circumstances.

14

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Amanda Antholt
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Amanda Antholt
LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607
(312) 243-5900

Michael Johnson
Michael A. Johnson & Associates
415 North LaSalle St.
Suite 502
Chicago, IL 60610-4543

**CERTIFICATE OF SERVICE**

I, Amanda Antholt, an attorney, certify that on July 9, 2008, I served this document by ECF electronic filing to counsel for all parties.

/s/ Amanda Antholt

15