IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JERVARA GARDNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 08 C 2836 |
| v. ) | |
| ) | Judge Kendall |
| CITY OF CHICAGO, CHICAGO POLICE OFFICER ) | |
| PETER AMELIO #11341, CHICAGO POLICE ) | |
| OFFICER KEITH SINKS # 18723, AND OTHER ) | |
| AS-YET UNKNOWN CHICAGO POLICE OFFICERS, ) | |
| ) | |
| Defendants. ) | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO STAY**

Now comes Plaintiff, Jervara Gardner, by his counsel, Loevy & Loevy, and respectfully opposes Defendants' motion to stay these proceedings for the following reasons.

**Introduction**

Neither the law nor the underlying circumstances favor the over-broad stay sought here by the defense. Balancing the equities, insurmountable prejudice would accrue to Plaintiff if all discovery in this civil proceeding remained frozen until after the criminal proceeding had entirely run its course, a process that may well take several years. There is no persuasive justification for forcing Plaintiff to wait until witness' memories have faded (and witnesses themselves have scattered) before even commencing discovery.

Moreover, the two central premises in Defendants' motion are incorrect. First, Plaintiff has no intention of asserting the Fifth Amendment in this case, a reality which undermines

Defendants' contention that discovery would be unbalanced and unfair. Second, this is at bottom not a false arrest case anyway; the central allegation is actually excessive force, meaning that <u>Younger</u> abstention is not appropriate or warranted under the case law.

## Background

The allegations made by Plaintiff in this lawsuit are as follows.[1]

On Sunday, May 11, 2008, Mr. Gardner (age 19) was walking with a stroller containing his baby son. Mr. Gardner was headed to his aunt's home for Mother's Day dinner.

Two of the Defendant Chicago Police Officers approached the area, along with other unknown Defendant Officers whom Plaintiff has yet to identify though discovery. One of the Defendant police officers fired his gun, and one of the bullets struck Mr. Gardner in the back. Mr. Gardner was unarmed and was presenting no threat to anyone at the time he was shot in the back. The use of force was therefore unwarranted and unjustifiable.

As Mr. Gardner lay severely injured on the ground, the Defendant Officers placed a weapon near his body. That gun did not belong to Mr. Gardner and was not possessed by Mr. Gardner at any time until the Defendant Officers placed it on or near him.

Several witnesses observed the Defendants place the gun near Mr. Gardner's fallen body in an attempt to justify their deadly

---

[1] Because discovery has not commenced and there is thus not yet any factual record, Plaintiff cites to the allegations in his most recent complaint.

force. In fact, one witness went on the television news and made the statement that he (not Mr. Gardner) had a gun, which he had thrown into a neighboring yard as he fled. According to this witness, the police had retrieved his gun (not any gun belonging to Mr. Gardner) from the yard and placed it near Mr. Gardner's body after the shooting.

As a result of this allegedly-unjustified use of deadly force, Jervara Gardner has been rendered paralyzed from the waist down.

### Argument

Defendants ask this Court to stay all aspects of this civil case until the criminal case is fully resolved, a situation that is likely to take anywhere from at least one to three years, and possibly more. The requested relief should be rejected for any of several reasons.

First, the *Younger* abstention doctrine does not mandate a stay in this case, and the case law does not support Defendants' argument that the mere existence of a criminal case automatically brings all civil litigation to a standstill. Second, such a stay would cause substantial and possibly irreparable damage to Plaintiff's ability to prove his case, prejudice which can and should be avoided. These arguments are addressed below, beginning with the latter.

### I.   Defendants' Proposed Stay Would Cause Substantial Prejudice To Plaintiff's Ability To Prove His Case

A central premise in Defendants' argument is that "[t]here will be no prejudice to Plaintiff in this case if this matter is

stayed until the underlying criminal proceedings against him are resolved." Motion ¶ 10. Plaintiff strongly disagrees. If Plaintiff is denied the opportunity to begin discovery until long after the facts and witness memory have become stale, the prejudice will be substantial. Cf. <u>Digital Equipment. Corp. v. Currie Enterpr.</u>, 142 F.R.D. 8, 12 (D.Mass. 1991) (denying a stay because "plaintiff is entitled to a speedy discovery process" and "memories become stale with the passage of time").

As stated, it could be (and likely will be) years until the criminal matter is fully resolved. By then, witnesses memories will have necessarily faded, assuming some of those witnesses could still be located at all. It is one thing to ask a bystander to recount details about events that are relatively fresh, but quite another when the events happened years earlier.

Accordingly, witnesses supporting the Plaintiff's version will be "less credible" because they will be subject to cross-examination on lack of memory. By a similar token, with respect to police witnesses who Plaintiff would like to cross-examine about the flaws/problems in their stories, those witnesses will be more able to hide behind lack of recollection if they are able to postpone inquiry until years after the fact. Cf. <u>Banks v. Yokemick</u>, 144 F.Supp. 2d 272, 276 (S.D.N.Y. 2001) ("The passage of time works considerably to [the opponent's] detriment. Delay obviously tends to decrease the availability of witnesses. The longer the case is postponed, the more Banks risks failing to see an adjudication of her rights").

Similarly, Plaintiff would be deprived of the ability to name potential Defendants before the statute of limitations expires if Plaintiff could take no discovery until the criminal case had fully resolved. Forcing Plaintiff to wait until after the statute of limitations has run (nine months from now on the state law claims) before commencing discovery would mean that any unidentified Defendants would escape liability.[2]

By way of illustration, Plaintiff's counsel is presently litigating another case against the City where the Plaintiff alleges the shooting was shooting was unjustified. See Dunbar v. City of Chicago, Case No. 07 C 204. As here, Plaintiff filed his case promptly after the shooting, hoping to litigate while memories were still fresh. As it turned out, however, the police officer involved had been called to serve in Iraq, triggering an automatic stay under a federal statute.

When the Defendant returned and discovery began -- more than a year after the shooting -- various police witnesses testified that they no longer recalled many critical facts. Ultimately, the jury may well not fault them for that; people cannot be expected to recall details when asked about them long after the events. The point, however, is that this lack of recollection necessarily harms the plaintiff's ability to prove the case.

In the Iraq case, the delay was unavoidable due to a federal

---

[2] Admittedly, Plaintiff believes he has named the officer whose shot paralyzed Mr. Gardner, but Plaintiff also alleges a conspiracy (to, among other things, plant the gun) involving other Defendants whose identities and roles have yet to be explored.

statute. There is no such impediment here. This case could and should proceed now, while everything is freshest for everyone. For example, Plaintiff would like to begin deposing the bystanders now, depositions which would not even arguably "interfere" with any state court proceeding. See also Fed. R. Civ. P. 1 (encouraging a "speedy" resolution of federal lawsuits).

In addition to purported lack of prejudice, the other primary argument Defendants offer in response on the equities is that "[i]t is unfair to the City Defendants because any reasonable attempts to proceed with discovery, including the deposition and interrogatories to Plaintiff, would be thwarted by Plaintiff's invocation of his Fifth Amendment right against self-incrimination." Motion ¶ 9. This premise, too, is mistaken. If the litigation is permitted to proceed, Plaintiff has no intention of asserting his Fifth Amendment rights. He intends to testify in response to discovery inquiries.[3]

That misimpression having been corrected, there is no longer any force to Defendants' equities argument. They will not be

---

[3] Moreover, even if Plaintiff had decided to assert his Fifth Amendment rights, this would only accrue to his detriment in this civil litigation, where any such privilege assertions could be used by the Defendants against him. Admiral Ins. Co. v. Federal Sec., Inc., 1996 WL 139243, *1 (N.D.Ill. 1996) (calling it "well-settled that it is not unconstitutional to force a litigant to choose between invoking the Fifth Amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution"), citing Baxter v. Palmigiano, 425 U.S. 308 (1976). It should go without saying that a plaintiff who took the Fifth on the heart of the case could not legitimately expect to win a jury trial.

prejudiced in the least by any privilege invocations. The only real risk of prejudice would be to Plaintiff, and that only if the case is stayed. That prejudice would not only be substantial, but it is entirely avoidable because there is no good reason to incur it.

## II. The Law Does Not Support The Type Of Stay Sought By Defendants In This Case

A discovery stay is an "extraordinary" remedy. Sterling Nat. Bank v. A-1 Hotels Intern., Inc., 175 F.Supp. 2d 573, 576 (S.D.N.Y. 2001). Such relief presupposes "special circumstances," and parallel criminal proceedings do not ordinarily so qualify. United States v. Certain Real Prop., C/K/A 6250 Ledge Road, Egg Harbor, Wis., 943 F.2d 721, 729 (7th Cir. 1991).

In Younger, the Supreme Court held that absent extraordinary circumstances federal courts should abstain from enjoining ongoing state proceedings. Younger v. Harris, 401 U.S. 378 (1971). As Defendants point out, the Younger doctrine has more recently been extended beyond cases seeking solely to enjoin state proceedings, but it is also true that "[t]he decision whether to abstain 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction.*'" Barichello v. McDonald, 98 F.3d 948, 955 (7th Cir. 1996) (emphasis added), quoting Moses H. Cone Hosp. v. Mercury Constr., 460 U.S. 1, 16 (1983).

Turning to this case, a major problem in Defendants'

argument is that it assumes the prototypical "false arrest" case. See Defendants' Motion ¶ 5 (citing discussion in Wallace about why "false arrest" cases can be stayed until the validity of the arrest is adjudicated). This case, by contrast, is not primarily a false arrest case. Although false arrest is one of the five Counts pled, this is at bottom an excessive force case. The false arrest is almost incidental, as all of the real damages stem from the alleged excessive force.

This is important because from a "friction" standpoint, it is well-settled that excessive force cases do not necessarily imply the invalidity of the underlying criminal charges. Booker v. Ward, 94 F.3d 1052, 1056 (7th Cir. 1996) ("a wrongful arrest claim, like many Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction"); Washington v. Summerville, 127 F.3d 552 (7th Cir. 1997) (success on plaintiff's "excessive force claim would not have necessarily implied the invalidity of a potential conviction on the murder charge against him").

Booker and Washington were decided pre-Wallace, when courts in this Circuit examined Fourth Amendment claims on a case-by-case basis to determine whether the particular allegations "necessarily implied the invalidity" of the plaintiff's conviction in Heck terms. E.g., VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006) ("[W]hether this suit is barred by Heck hinges on whether an action against Baker for excessive use of

8

force necessarily implies the invalidity of VanGilder's conviction for resisting. The answer is no."). It is true that in Wallace, the Supreme Court affirmed a bright-line rule, holding that all Fourth Amendment claims are Heck-barred. However, Defendants properly do not suggest that the holding of Wallace somehow controls this dispute; rather, they cite to Justice Scalia's reference to how false arrest claims are often handled, a view that obviously makes a lot more sense in true false arrest cases -- as opposed to a case that is more fairly characterized as an excessive force case, such as this one. See Robinson v. Doe, 272 F.3d 921 (7th Cir. 2001) ("It might appear that because the defendants deny having used excessive force, the plaintiff could not prevail in this suit without proving them to be liars. . . [But n]ot necessarily. Police might well use excessive force in effecting a perfectly lawful arrest. And so a claim of excessive force in making an arrest does not require overturning the plaintiff's conviction even though the conviction was based in part on a determination that the arrest itself was lawful.").

Thus, because a decision by this Court to allow Plaintiff to depose witnesses and proceed to prove his civil case would not necessarily cause any friction with any rulings of the state court, this Court should reject application of Younger and permit the case to proceed. See Lockheart v. Chicago Police Dept., 1999 WL 639179, at *2 (N.D.Ill. Aug. 17, 1999) (Kennelly, J.) (Younger abstention did not apply to excessive force claim rising out of

same incident that spurred ongoing state criminal proceeding); Patterson v. Broadway, 1996 WL 568802, *1 (N.D.Ill. Oct. 2, 1996) (Shadur, J.) (Younger abstention did not apply where excessive force claim was "not at all dependent upon the disposition of the still-pending criminal charge"); Murray v. Administration for Children's Services, 1999 WL 33869, *2 (S.D.N.Y. Jan. 25, 1999) (Younger abstention did not apply to excessive force claim stemming from child custody dispute).

Turning to the cases cited by the Defendants, they rely most heavily on Simpson v. Rowan, 73 F.3d 134 (7th Cir. 1996). In that case, however, a Younger stay was granted after the plaintiff *had already been convicted*, and shortly before his post-conviction petition was filed. 73 F.3d at 135. In the case at bar, by contrast, Plaintiff hardly stands convicted of an underlying crime. Indeed, if past experience is any guide, there is no indication that he will even be tried anytime too soon. As Judge Guzman explained in a different, but analogous, context:

> There is no representation by either side as to how long the criminal investigation is likely to take or at what point in time it will become known to anyone if the defendants in the civil case are likely to be defendants in the criminal case. Thus, if a stay were granted in these proceedings, it would have to be an indefinite stay which could easily last months. *This would be an untenable situation.*

Admiral Ins. Co. v. Federal Sec., Inc., 1996 WL 139243, *1 (N.D.Ill. 1996).[4]

---

[4] The only other two cases upon which Defendants rely are equally unhelpful. The case of Majors v. Englebrecht, 149 F.3d 709 (7th Cir. 1998) involved a civil suit seeking an injunction ordering reinstatement of a nursing license during the pendency of

10

Moreover, the delay factor is substantial. Illinois follows the "minority rule" such that under Illinois law, *res judicata* does not come into play until a litigant exhausts all appeals, all the way to the Supreme Court. See Ballweg v. City of Springfield, 499 N.E.2d 1373, 1375, 114 Ill. 2d 107, 113 (1986); Terry v. Watts Copy Systems, Inc., 329 Ill. App. 3d 382, 391, 768 N.E.2d 789, 798 (4 Dist. 2002) ("For purposes of collateral estoppel, a judgment is not final until the potential for appellate review has been exhausted") (citing Ballweg). That means that what Defendants are really asking for is a very substantial stay. It could take more than a few years for the criminal case to make it to trial and then (if the result is adverse to Mr. Gardner) a direct appeal and Supreme Court review.

Finally, Defendants also argue that resolution of the criminal case "will in all practicality reduce the number of issues to be litigated in this matter." Motion ¶ 5. This is true only if Mr. Gardner loses the criminal matter. If Mr. Gardner is acquitted, then absolutely nothing regarding this civil suit will be avoided.

Moreover, Plaintiff respectfully submits that this is an unduly one-sided approach to civil litigation to freeze Mr. Gardner's case indefinitely because there is a chance he might lose the criminal case. If Mr. Gardner wins the criminal case,

---

an administrative revocation proceeding, and the plaintiffs in Nelson v. Murphy, 44 F.3d 497 (7th Cir. 1995) brought a lawsuit challenging the restrictions in a mental institution after they had already been convicted and ordered confined.

then absolutely nothing is gained by the type of delay sought by the defense. No legitimate interest is served by putting distance between the serious allegations raised by Mr. Gardner and the resolution of those allegations in this federal courthouse. The words of the Fifth Circuit (albeit from a different context) ring true here:

> Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the entire process with the pall of disorganization and insolubility. But even these are not the worst of what delay does. The most erratic gear in the justice machinery is at the place of fact finding, and possibilities for error multiply rapidly as time elapses between the original fact and its judicial determination.

Ryland v. Shapiro, 708 F.2d 967, 974 (5th Cir. 1983).

## Conclusion

For all of the foregoing reasons, this Court should reject Defendants' request for an indefinite stay until the criminal case has fully resolved, and instead permit Mr. Gardner to proceed with discovery in this cause.

RESPECTFULLY SUBMITTED,

_____

Arthur Loevy
Jon Loevy
Michael Kanovitz
Elizabeth Mazur
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607

## Certificate of Service

I, Jon Loevy, an attorney, hereby certify that I served a copy of this pleading on opposing counsel by means of this Court's electronic filing system.

_____